The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before former Deputy Commissioner Lawrence B. Shuping, Jr., and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or to amend the prior Opinion and Award. The Full Commission has made minor, non-substantive modifications throughout the text of the Opinion and Award.
**********
The Full Commission finds as fact and concludes as matters of law the contents of the parties' Pre-Trial Agreement, which is incorporated herein by reference, and in which certain factual and jurisdictional stipulations were agreed to.
************
The Full Commission adopts the finding of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing on August 26, 1996, plaintiff was a 45 year old female who had worked and trained as a ballet dancer for twenty-three years. In addition to her own dancing, at the time of her injury, plaintiff also taught period dance and her hobbies included dressage.
2. Since September of 1995 plaintiff has been employed by the University Club of Rochester in Rochester, New York as Membership Development Director, but when injured was Administrator and Membership Director of defendant-employer, Greensboro City Club.
3. Prior to her injury plaintiff had degenerative left-sided spondylosis at the C5-6 and C6-7 levels of cervical spine manifested by left-sided narrowing of the foramen at the same levels or the area between the vertebrae where the nerve roots exit at each level. This condition was subject to being aggravated by a neck injury compressing the nerve root at those levels resulting in a compressive injury to the same nerve roots or cervical radiculopathy. Cervical radiculopathy is manifested by neck, shoulder and arm pain and arm weakness, but classically begins with shoulder pain such as plaintiff experienced immediately following her fall. Cervical radiculopathy ultimately matures to radicular pain and weakness in the arm. However, prior to her injury plaintiff had not experienced any neck problems prior to falling at work; but rather, her pre-existing neck condition had remained asymptomatic.
4. As she was taking some dirty dishes from the office area to the kitchen by way of the employees stairs on February 24, 1995, plaintiff's feet went out from under her and she fell down the same stairway landing flat on her back and left side, with her right side against the wall. As the result, plaintiff sustained an admittedly compensable permanent low back injury that was subject of the prior Industrial Commission Award herein for her resulting five percent permanent partial disability, as well as injuries to her left wrist, left elbow, right hip and coccyx. Plaintiff also sustained an axial loading type injury as the result of this incident to her neck or cervical spine, which materially aggravated the pre-existing, but previously asymptomatic, degenerative left-sided spondylosis that she had developed at the C5-6 and C6-7 levels. This incident and her resulting physical condition proximately contributing to plaintiff's ultimate disability by compressing the nerve roots at those levels resulting in a compressive injury to the same nerves or cervical radiculopathy manifested by the neck, left shoulder and arm pain as well as left arm weakness.
5. After being seen at the emergency room the same day complaining of pain in her left wrist, left elbow, left shoulder, back and coccyx, on March 31, 1995 plaintiff was referred to an orthopedic surgeon, Dr. Vincent Paul of Greensboro, by defendant-employer's General Manager, Peter Johnson because of her continuing problems. Although Mr. Johnson's referral letter indicated that plaintiff sustained injuries to her tailbone, sacrum, wrist and shoulder areas when she fell and she had continued to experience left shoulder pain since the fall; it was for her persisting back and coccyx pain that plaintiff sought treatment, which was then more severe than her left shoulder pain and is consistent with the fact that coccyx injuries can be very painful resulting in plaintiff focusing on her symptoms in that area.
6. Dr. Paul subsequently referred plaintiff for physical therapy and on April 7, 1995 she underwent an evaluation by the physical therapist assigned, John O'Halloran. Although plaintiff did not begin physical therapy on April 7, 1995 nor complain about any left shoulder pain; three days later she did both and began receiving physical therapy for not only her sacroiliac and coccyx pain; but for the muscle tightness she had developed since she fell along the paraspinal muscles in the left shoulder and neck in the form of different modalities involving both the left shoulder and cervical spine.
The region or area of the left shoulder in which plaintiff had been experiencing pain since her fall was in the dermatonal distribution of the C5-6 and C6-7 nerve roots and was a classic symptom of an evolving cervical radiculopathy from the injury to the same nerve roots plaintiff sustained when she fell materially aggravating her pre-existing, but previously asymptomatic, cervical spondylosis. Plaintiff's condition did not fully mature until she began experiencing radicular pain and weakness in her left arm upon awakening on August 21, 1995.
7. As a result of her more severe symptoms plaintiff returned to Dr. Paul two days later and he subsequently had her undergo a diagnostic MRI because of suspecting a herniated cervical disc. The MRI revealed the pre-existing left-sided cervical spondylosis that plaintiff had developed at the C5-6 and C6-7 levels of her cervical spine and resulting narrowing of the exit foramen, which was materially aggravated by plaintiff's fall resulting in injuries to one or both of the nerve roots at the same level and her developing a cervical radiculopathy manifested by pain and weakness in her left arm.
8. Dr. Paul initially attempted a conservative course of treatment for plaintiff's resulting cervical radiculopathy consisting of sending her to physical therapy for light general traction, home traction as well as and multiple medications, including pain medication, muscle relaxant and a Dosepak of cortisone. He then contemplated a cervical steroid injection to calm the cervical nerves down and, if her condition did not improve, possible surgery, but was working against the clock because plaintiff was scheduled to move to Rochester, New York to accept her current job there at the University Club of Rochester.
9. After moving to Rochester plaintiff was referred to a neurosurgeon for evaluation, Dr. Paul K. Maurer, who had her undergo a diagnostic intrathecal CAT scan and myelogram demonstrating the nerve root compression and resulting cervical radiculopathy that she had developed from her fall manifested by left arm pain and numbness.
Dr. Maurer recommended that plaintiff undergo corrective neck surgery in the nature of a posterolateral foraminotomy, which is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with her cervical radiculopathy by alleviating the nerve root compression responsible for her symptoms; therefore, defendant-employer is obligated to provide the recommended surgery.
As a result of the same surgery plaintiff will likely be disabled and unable to earn any wages during the four to six week period required to recover from surgery. To date, however, plaintiff has not missed any time from work as a result of the fall and resulting multiple injuries she sustained on February 24, 1995; but rather, was able to continue regularly working for defendant-employer up until the time she was terminated from its employ and to thereafter obtain her current job at the University Club of Rochester in September of 1995, where she has since continued regularly working to date.
10. After plaintiff voluntarily moved out of state to accept the new job at the University Club of Rochester she chose to pursue the involved claim in North Carolina by requesting a hearing before the Industrial Commission requiring her to return to North Carolina to attend the same hearing. There is no evidence, however, that plaintiff's termination from defendant's employ had anything at all to do with her injury or that the same injury otherwise required her to move out of state. Under the foregoing circumstances defendant-employer is not responsible for the cost of plaintiff's airline ticket to return to North Carolina to return for hearing.
11. Because the situation in this case is factually distinguishable from the case of State v. Cloutier, as part of its responsibility for bearing the cost of Dr. Maurer's deposition, defendant-employer is not obligated to pay the travel costs of plaintiff's counsel to attend the same deposition. Unlike the physician involved in the State v. Cloutier case, to whom plaintiff was referred by her employer, who saw her the next day and performed three surgeries before moving out of state making his testimony vital, Dr. Maurer was not plaintiff's original primary treating physician and only initially saw her for the purpose of an evaluation. Further Dr. Maurer's testimony was cumulative because, while conflicting Dr. Maurer's, Dr. Paul's testimony was sufficient to establish medical causation. Finally there is no evidence that Dr. Maurer's deposition could not have been taken by telephone rather than having the parties appear in Rochester, New York to do so.
12. Because of the clearly conflicting nature of the medical evidence from both physicians regarding the issue of causation, this matter was not defended without reasonable ground based on stubborn, unfounded litigiousness entitling plaintiff to an Award of attorney fees pursuant to the provisions of G.S. § 97-88.1.
**************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the injury by accident giving rise hereto plaintiff also sustained a neck injury, which materially aggravated her pre-existing, but previously asymptomatic cervical spondylosis thereby proximately contributing to her ultimate disability by resulting in her developing a cervical radiculopathy at the involved levels of her cervical spine manifested by the left arm pain and weakness she ultimately developed and because of the same condition is in need of the corrective neck surgery recommended by Dr. Maurer, which is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith; therefore, defendant-employer is obligated to provide the recommended surgery as well as to compensate plaintiff during the contemplated four to six week period she will be disabled and unable to earn any wages while recovering from surgery. G.S. § 97-2(6); G.S. § 97-25.
2. Plaintiff is not entitled to be reimbursed for the cost of the airline ticket necessary to her to fly from Rochester, New York to the hearing in North Carolina nor is her attorney entitled to be reimbursed for the travel cost associated with taking the deposition of Dr. Maurer in New York. G.S. § 97-26.1.
3. This matter was not defended without reasonable ground and therefore, plaintiff is not entitled to an attorney fees pursuant to the provisions of G.S. § 97-88.1.
**************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant-employer shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof the corrective neck surgery recommended by Dr. Maurer when bills for the same are submitted in accordance with the Industrial Commission rules.
2. Defendant-employer shall also pay plaintiff weekly compensation benefits at a rate of $336.59 per week during the contemplated four to six week period that she is disabled from work and unable to earn any wages while recovering from surgery.
3. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due for the period of time that plaintiff is disabled while recovering from her corrective neck surgery is approved for plaintiff's counsel. To the extent plaintiff also retains any permanent partial disability as a result of her neck injury plaintiff's counsel would be entitled to an additional fee, which is deferred pending any disability rating and final Award.
4. Defendants shall bear the cost, but not an attorney fee for plaintiff pursuant to the provisions of G.S. 97-88.1 nor the cost of plaintiff's airline ticket to travel to hearing or the travel cost of her counsel to attend Dr. Maurer's deposition in New York.
 S/ __________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________ DIANNE C. SELLERS COMMISSIONER